UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
DR. UGO ALEXIS IREH,

                            Plaintiff,

          - against -

NASSAU UNIVERSITY MEDICAL
CENTER and NASSAU HEALTH CARE
CORPORATION,

                          Defendants.
----------------------------------------------------------X

**ORDER**

CV 06-09 (LDW) (AKT)

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

**I.    PRELIMINARY STATEMENT**

Before the Court is Plaintiff Dr. Ugo Alexis Ireh's motion to quash a subpoena *duces tecum* served upon his former employer, the Hospital of St. Raphael, by Defendants Nassau University Medical Center ("NUMC") and Nassau Health Care Corporation ("NHCC") [DE 30]. I have reviewed Plaintiff's moving papers ("Pl. Mem.") as well as Defendants' opposition papers ("Defs. Opp'n") [DE 31], and heard extensive oral argument from both parties. The parties have also submitted (1) a March 4, 2008 Order from Magistrate Judge King of the Northern District of Georgia which denied Plaintiff's motion to quash an identical subpoena *duces tecum* served upon another of Plaintiff's former employers, the Morehouse School of Medicine, (2) Plaintiff's Memorandum of Law in Support of his Motion for Reconsideration of Magistrate Judge King's March 4, 2008 Order ("Pl. N.D.Ga. Mem."), (3) Defendants' Memorandum of Law in Opposition to Plaintiff's Motion for Reconsideration of Magistrate Judge King's March 4, 2008 Order ("Defs. N.D.Ga. Opp'n"), (4) Plaintiff's Reply Memorandum of Law in Further Support of his Motion for Reconsideration of Magistrate Judge King's March 4, 2008 Order ("Pl. N.D.Ga.

Reply"), and (5) an April 9, 2008 Order from District Judge Tidwell of the Northern District of Georgia denying Plaintiff's motion for reconsideration of Magistrate Judge King's March 4, 2008 Order. At the parties' request, the Court has also thoroughly considered the arguments raised in these motion papers. For the reasons stated more fully below, Plaintiff's motion to quash is GRANTED in part, to the extent that I am modifying the subpoena as set forth below.

## II. BACKGROUND

Plaintiff commenced this action against Defendants Nassau University Medical Center and Nassau Health Care Corporation alleging discrimination and retaliation in violation of 42 U.S.C. §§ 1981 and 1983, Title VII of the Civil Rights Act of 1964 ("Title VII") and the New York Human Rights Law ("NYHRL"). Specifically, Plaintiff alleges that upon the completion of his tenure as a fourth-year medical resident, Defendants declined to renew his residency contract for a fifth year, and that this refusal was discriminatory and unlawfully based upon Plaintiff's race and national origin.

Before Plaintiff became employed by Defendants as a fourth-year resident, Plaintiff graduated from Morehouse School of Medicine (and apparently participated in a residency program there) and was subsequently employed by the Hospital of St. Raphael as a medical resident. Defs. Opp'n, Ex. D. Defendants served a subpoena upon non-party Hospital of St. Raphael seeking the production or inspection of

> Dr. Ireh's personnel file, academic file, and departmental file, as well as any documents concerning his application for employment and/or appointment as an academic resident, job duties and responsibilities, changes in position, transfers, promotions, compensation, benefits, attendance history, performance history (including performance and academic evaluations), discipline history, and allegations and/or complaints of discrimination and/or harassment, if any.

Pl. Mem., Ex. A. Defendants also served an identical subpoena upon the Morehouse School of Medicine. Plaintiff filed a motion in this district to quash the subpoena served upon non-party Hospital of St. Raphael and filed a motion in the Northern District of Georgia to quash the subpoena served upon non-party Morehouse School of Medicine.

### III. PARTIES' CONTENTIONS

Plaintiff bases his motion to quash on the following grounds: (1) Defendants did not obtain permission from the Court before issuing the subpoena, (2) the subpoenaed documents were not included in Defendants' document requests, (3) the information sought bears no relevance to the issues in this action and is not likely to lead to the discovery of admissible evidence, (4) the documents sought are prejudicial to Plaintiff, (5) the documents sought are "unreasonably cumulative or duplicative," and (6) the subpoena "requires disclosure of an un-retained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party." Pl. Mem. at 1.

Defendants respond initially that Plaintiff's motion to quash is untimely because, even though Plaintiff was aware of the subpoena as early as December 18, 2007, Plaintiff did not file the motion to quash until January 22, 2008 – eleven days after the subpoena's return date. Defs. Opp'n at 2. Defendants also contend that Plaintiff lacks standing to challenge the subpoena because the Hospital of St. Raphael itself has not moved to quash the subpoena or claimed that any of the subpoenaed documents are confidential or privileged. *Id.* Defendants assert that "documents and information showing that Dr. Ireh had academic and clinical performance problems in the past" are "material and relevant to the defense of this matter." *Id.* With respect

3

to Plaintiff's remaining contentions, Defendants assert that "court approval is not required to issue a non-party subpoena during the regular course of discovery," and there is no basis to quash the subpoena merely because Defendants did not request the documents at issue in a document request. Finally, Defendants contend the subpoena "does not seek the 'opinion of an un-retained expert.'" *Id.* at 3.

IV. **DISCUSSION**

    A. **Timeliness of the Motion to Quash**

Courts within this Circuit have interpreted Rule 45's requirement that a motion to quash be filed in a "timely" manner to mean that such a motion must be filed within the time set in the subpoena for compliance. *See Innomed Labs, LLC v. Alza Corp.*, 211 F.R.D. 237, 240 (S.D.N.Y. 2002); *Nova Biomedical Corp. v. i-STAT Corp.*, 182 F.R.D. 419, 422 (S.D.N.Y. 1998). On December 18, 2007, Defendants gave Plaintiff notice that they intended to serve the subpoena upon the Hospital of St. Raphael on December 28, 2007 and that the return date of the subpoena was January 11, 2008. Defs. Opp'n, Ex. A. It appears that Plaintiff was informed on January 8, 2008 that the subpoena had been re-served upon the Hospital of St. Raphael on January 4, 2008 and had the same return date of January 11, 2008. *Id.*, Ex. C. Plaintiff did not file the instant motion to quash until January 22, 2008 – eleven days after the January 11, 2008 return date. Defendants' opposition, however, states that the Hospital of St. Raphael had still not produced any documents in response to the subpoena by that late date. *See id.* at 1.

"The decision of whether to quash or modify a subpoena is within the district court's discretion." *Olszewski v. Bloomberg L.P.*, No. 96 Civ. 3393, 2000 WL 1843236, at *4 (S.D.N.Y. Dec. 13, 2000). Courts have often exercised their discretion to consider motions to quash that

4

were not "timely" filed within the meaning of Rule 45 and applicable case law. *Id.* (considering untimely motion to quash); *see also Grigsby & Assoc., Inc. v. Rice Derivative Holdings, L.P.*, No. 00 Civ. 5056, 2001 WL 1135620, at *4 (S.D.N.Y. Sept. 26, 2001) (considering untimely motion to quash because circumstances, including clearly overbroad nature of subpoena, warranted overlooking timeliness issue).

Here, because the Court finds that the subpoena is overbroad in scope – as discussed more fully below – and because the Hospital of St. Raphael had still not produced the documents as of the date the motion to quash was filed, the Court chooses to exercise its discretion to consider the merits of Plaintiff's motion to quash even though the motion was filed eleven days after the return date.

### B. Standing of Plaintiff to Oppose the Subpoena

As a general rule, a party lacks standing to move to quash or modify a subpoena directed at a non-party. *See ADL, LLC v. Tirakian*, No. CV 06-5076, 2007 WL 1834517, at *2 (E.D.N.Y. June 26, 2007); *Fox Indus., Inc. v. Gurovich*, No. CV 03-5166, 2006 WL 2882580, at *13 (E.D.N.Y. Oct. 6, 2006); 9 James Wm. Moore et al., *Moore's Federal Practice* ¶ 45.50 (3d ed. 2007). If, however, a party claims a "personal right or privilege regarding the production . . . sought by a subpoena directed to a nonparty, the party has standing to move to quash" the subpoena. *Moore's* ¶ 45.50; *see also Allocco Recycling, Ltd. v. Doherty*, 220 F.R.D. 407, 410-11 (S.D.N.Y. 2004).

Here, the documents sought are held by Plaintiff's former employer, the Hospital of St. Raphael, which is located in Connecticut. In Connecticut, a state statute specifically provides, "[n]o individually identifiable information contained in the personnel file . . .of any employee

5

shall be disclosed by an employer to any person or entity not employed by or affiliated with the employer without the written authorization of such employee" except when such disclosure is made pursuant to a valid subpoena or other court order. Conn. Gen. Stat. § 31-128f. Thus, Plaintiff "may assert a privacy interest in [his] personnel files, though they are in possession of [his] former employer." *Badr v. Liberty Mut. Group, Inc.*, No. 3:06 Civ. 1208, 2007 WL 2904210, at *1 (D.Conn. Sept. 28, 2007) (finding the plaintiff had standing to move to quash a subpoena seeking personnel records that was served on a non-party former employer).

    C.    **Relevance of the Documents and Information Sought by the Subpoena**

Defendants posit three main arguments concerning why the documents subpoenaed from the Hospital of St. Raphael (Plaintiff's personnel, academic, and departmental files) are relevant to the claims and defenses in this action. First, Defendants assert that if the subpoenaed records reveal that Plaintiff performed poorly while he worked as a medical resident for the Hospital of St. Raphael, this information would support Defendants' position that its decision not to renew Plaintiff's residency contract was legitimate and non-discriminatory (i.e., based on his poor work performance). Defs. Opp'n at 2-3.[1] Defendants note that on an employment application Plaintiff completed after leaving Defendants' employ, Plaintiff stated that his reason for leaving the Hospital of St. Raphael was because he had "no contract," and this was the same reason he gave for leaving NUMC. *Id.* at 2. Accordingly, Defendants assert "there is more than adequate reason to believe" that the subpoenaed documents will demonstrate that Plaintiff exhibited poor work performance during his residency at the Hospital of St. Raphael. *Id.*

---

[1] Defendants stress that they are not seeking "after acquired evidence" of any poor work performance during Plaintiff's prior residencies in order to bolster its decision not to renew his residency contract. Defs. N.D.Ga. Opp'n at 8 n.2.

Second, Defendants contend in an argument raised during the February 11, 2008 status conference that the subpoenaed records are relevant to Plaintiff's credibility. Specifically, Defendants assert that if Plaintiff did not lodge discrimination complaints against the Hospital of St. Raphael after he received poor performance evaluations, such fact tends to undermine the credibility of his current accusations of discrimination against Defendants. In addition, Defendants argue that if Plaintiff *did* raise complaints of discrimination or retaliation against the Hospital of St. Raphael, such information would be material in this action as well. Defs. N.D.Ga. Opp'n at 8.

Finally, Defendants claim[2] that the subpoenaed documents are relevant to Plaintiff's claimed damages and efforts to mitigate. Defendants assert that documents produced during discovery reflect that a resident seeking a Board certification may attend only three residency programs. If Plaintiff is not welcome to return to the residency programs of either the Morehouse School of Medicine or the Hospital of St. Raphael due to his poor work performance, Defendants argue that Plaintiff cannot maintain that Defendants' failure to renew his residency contract is the sole reason that he will not be able to become Board certified. Defendants aver that in such a scenario, they should be able to argue that they are not solely responsible for any damages flowing from Plaintiff's inability to procure a Board certification. *Id.* at 8-9.

---

[2] Although this argument was not raised in Defendants' letter opposition to Plaintiff's motion to quash nor at oral argument, it was raised as part of Defendants' opposition to Plaintiff's motion for reconsideration of the Northern District of Georgia's March 4, 2008 order denying Plaintiff's motion to quash the identical subpoena served upon non-party Morehouse School of Medicine. At the parties' request, this Court has reviewed and considered the parties' respective arguments raised before the Northern District of Georgia in their briefing of that motion.

Plaintiff argues that any documentation regarding his work performance during his prior residency at the Hospital of St. Raphael is irrelevant to the claims and defenses asserted here. First, Plaintiff states that his prior performance record at the Hospital of St. Raphael was never considered by Defendants as part of their decision not to renew his residency contract. Pl. N.D.Ga. Mem. at 6. Plaintiff also argues that evidence of his prior work performance at an entirely different residency program cannot be used to demonstrate that he performed poorly as a resident employed by Defendants. *Id.* at 7. Such evidence, Plaintiff contends, would constitute character evidence that is inadmissible for the purpose of "proving action in conformity therewith." *Id.* at 9, 10 (citing Federal Rule of Evidence 404(a) and collecting cases that "illustrate the inadmissibility of evidence of prior job performance for the purpose of demonstrating that if once a 'poor' performer, then always a poor performer"). Finally, Plaintiff asserts that the use of any evidence of his prior work records will confuse the jury and has the potential to cause him "undue prejudice." *Id.* at 8.

In response to Defendants' contention that the subpoenaed records are relevant to Plaintiff's claims for damages and attempts to mitigate those damages, Plaintiff states that if Defendants are found to have engaged in unlawful discrimination, they will be liable for all damages that flow from such discrimination. Pl. N.D.Ga. Reply at 4-5. Plaintiff stresses that his allegations of discrimination are directed only towards Defendants and bear no relationship to his employment (or the cessation of his employment) with the Hospital of St. Raphael. *See id.* at 5. Plaintiff also states that his prior employment records are irrelevant to his attempts to mitigate "because the relevant period to be examined for mitigation of damages is Plaintiff's post employment." *Id.*

Any subpoena that is issued to non-parties pursuant to Rule 45 is "subject to Rule 26(b)(1)'s overriding relevance requirement." *During v. City Univ. of N.Y.*, No. 05 Civ. 6992, 2006 WL 2192843, at *2 (S.D.N.Y. Aug. 1, 2006). Rule 26(b)(1) provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . ." Fed. R. Civ. P. 26(b)(1). "Relevance" under Rule 26 "has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978); *Barrett v. City of New York*, 237 F.R.D. 39, 40 (E.D.N.Y. 2006) (noting that the information sought "need not be admissible at trial to be discoverable").

The Court finds Defendants' assertion that "if Dr. Ireh's . . . performance at his prior residencies was poor, such information would support NUMC's position that its decision not to advance him to a fifth-year position was for legitimate, business-related reasons, and not discrimination" amounts to little more than a contention that if Plaintiff performed poorly during his residency at the Hospital of St. Raphael's, he most likely performed poorly during his tenure with Defendants as well. The Court finds that Plaintiff's performance during his prior residency bears no relevance to his actual work performance with Defendants. Further, his prior employment records are not likely to lead to the discovery of admissible evidence – such evidence as Defendants describe it would be inadmissible under Federal Rule of Evidence 404(a), which provides that "[e]vidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith . . . ." *See Chamberlain v. Farmington Sav. Bank*, No. 3:06 Civ. 01437, 2007 WL 2786421, at *3 (D.Conn. Sept. 25, 2007) (quashing subpoena served on the plaintiff's former employer when the defendant sought "to

discover evidence of the plaintiff's performance history in order to show that he has a propensity for certain performance deficiencies").

The Court also finds that the subpoenaed documents are not relevant on the subject of damages. Defendants anticipate Plaintiff's argument that Board certification is available only to those who complete a maximum of three residency programs, and because Defendants discriminated against Plaintiff, he will be forced to apply for a fourth residency program, thus precluding himself from applying for Board certification. Defendants seem to contend that Plaintiff is partially to blame for the state of his predicament because of his alleged poor performance at his prior two residencies, and that any damages awarded should be reduced accordingly. The Court rejects this argument. If Defendants refused to renew Plaintiff's residency contract for an unlawful reason – the crux of this case which has yet to be determined at trial – thereby resulting in Plaintiff's having to apply for a fourth residency program and precluding him from applying for Board certification, the Defendants could be held liable for Plaintiff's subsequent damages. Accordingly, the Court finds that the subpoenaed documents are not relevant to the issue of damages or mitigation of damages from that perspective.

The Court does agree, however, with Defendants' argument that any complaints of race or national origin discrimination made by Plaintiff against the Hospital of St. Raphael would be relevant to this action.[3] Accordingly, the Court will not quash the subpoena entirely. Instead, the Court will modify the subpoena so that the Hospital of St. Raphael is required only to produce

---

[3] The Court does not express any opinion as to the admissibility of any prior complaints of discrimination.

documents or correspondence it possesses regarding any internal or external complaints of race or national origin discrimination made by Plaintiff against the Hospital of St. Raphael.

### D. Plaintiff's Remaining Contentions

Plaintiff's remaining contentions in support of his motion to quash the subpoena are without merit. Defendants' counsel is not required by the Federal Rules to obtain permission from the Court before issuing or serving a subpoena on a non-party. Likewise, there is no requirement that Defendants request the same documents in their discovery requests to Plaintiff before serving the subpoena. There is no evidence that the documents sought are "unreasonably cumulative or duplicative." Finally, the modified subpoena cannot be viewed as "requir[ing] disclosure of an un-retained expert's opinion."

## V. CONCLUSION

For the reasons set forth above, Plaintiff's motion to quash is GRANTED in part, to the extent that the subpoena is hereby modified as discussed above. The Hospital of St. Raphael is required to produce only documents or correspondence in its possession regarding any internal or external complaints of race or national origin discrimination made by Plaintiff against the Hospital of St. Raphael.

**SO ORDERED.**

Dated: Central Islip, New York
September 17, 2008

/s/ A. Kathleen Tomlinson
A. KATHLEEN TOMLINSON
U.S. Magistrate Judge